# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 18, 2004

## STATE OF TENNESSEE v. STACY MCKINLEY TAYLOR
## alias RONALD LEE TAYLOR

**Appeal from the Criminal Court for Sullivan County**
**Nos. S47,106 and S47,112      Phyllis H. Miller, Judge**

---

**No. E2003-02458-CCA-R3-CD - Filed December 29, 2004**

---

The defendant, Stacy McKinley Taylor, was convicted of aggravated assault, criminal impersonation, theft, speeding, and evading arrest he received following a jury trial in the Sullivan County Criminal Court.  On appeal, he claims that the aggravated assault conviction is unsupported by sufficient evidence and that the trial court erred in sentencing him.  Following our review of the record, the parties' briefs, and the applicable law, we affirm the conviction of aggravated assault but modify the sentences.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed as Modified.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN, J., joined.  DAVID G. HAYES, J., filed a dissenting opinion.

Stephen M. Wallace, District Public Defender; Richard Tate, Assistant District Public Defender (at trial and on appeal); and Steve McEwen, Mountain City, Tennessee (on appeal), for the Appellant, Stacy McKinley Taylor.

Paul G. Summers, Attorney General & Reporter; Rachel E. Willis, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William Harper, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Following a three-day jury trial, the defendant was convicted of the following offenses, and the trial court imposed the following Range I sentences:

| | | |
|---|---|---|
| Criminal impersonation | Class B misdemeanor | 6 months |
| Criminal impersonation | Class B misdemeanor | 6 months |
| Aggravated assault | Class C felony | 6 years |
| Theft | Class D felony | 4 years |

| Speeding | Class C misdemeanor | 30 days |
| Evading arrest | Class A misdemeanor | 11 months, 29 days |

The aggravated assault sentence of six years, the theft sentence of four years, and the evading arrest sentence of eleven months, 29 days were imposed to run consecutively to each other; the other sentences run concurrently to each other and to the aggravated assault sentence, yielding an effective sentence of ten years, eleven months, and 29 days.

The defendant's convictions resulted from events that transpired on October 19, 2000. The evidence showed that the defendant appeared at a car lot in Knoxville and talked with the sales manager about purchasing a 1996 Cadillac Deville. The sales manager testified that he agreed for the defendant to test drive the car, and he asked "Henry" from the lot's clean-up shop to ride with the defendant on the test drive. The manager testified that the car had not been sold and that the defendant only had permission to test drive it. Henry testified that, when the defendant had traveled only a short distance to the Interstate ramp, he slowed to about five miles per hour, opened the passenger side door, shoved Henry out of the car, and drove onto the Interstate.

At approximately 6:00 p.m., Tennessee Highway Patrol Trooper Paul Mooneyham was parked on the shoulder of Interstate 81 in Sullivan County, about 110 miles from Knoxville. The defendant drove the Cadillac past him, and the trooper clocked him at 95 miles per hour (in a 70-miles-per-hour zone). The trooper pursued the Cadillac, which immediately pulled to the roadside and stopped. When the trooper approached the driver's window and asked for the defendant's license, the defendant informed him that he was a football tight end at the University of Tennessee. The defendant explained that he had left his license on campus and was going to the hospital in Bristol to see a friend who had suffered a stroke. The trooper knew that the defendant was not a U.T. football player because he could not name the then first-team tight end, Jason Witten, who had achieved national recognition as a player. Upon being unable to produce a license, the defendant showed the trooper a check stub bearing the name of Jonathan Peyton. He represented himself to be Mr. Peyton and provided a social security number. When this information did not prove reliable following the trooper's computer check, the defendant then said his name was Ronald Taylor, who in reality is the defendant's brother. Eventually, the trooper's computer consultations revealed that the defendant's license had been suspended and that the license tag on the Cadillac was registered to a Toyota. The trooper placed the defendant in the secure backseat of his cruiser.

Afterward, the trooper learned that the Cadillac had been reported stolen and called for assistance. When Trooper Christy Osborne arrived, Trooper Mooneyham undertook to place handcuffs on the defendant because department policy required that, in a felony arrest, the arrested must be handcuffed. The trooper determined that the safest procedure would be to avoid removing the defendant from the cruiser. He told the defendant to lie on his stomach in the backseat of the cruiser and place his hands behind his back, and that the trooper was going to affix the handcuffs. During this procedure, the defendant began to thrust himself toward the trooper and the open door of the cruiser. The trooper "flipped" the defendant over onto his back and tried to secure him. When

Trooper Osborne opened the opposite rear door -- the door now closest to the defendant's head, the defendant tried to move toward that door. In struggling against Trooper Mooneyham's efforts to restrain him, the defendant kicked Trooper Mooneyham in the left shoulder.

The trooper testified that his shoulder immediately became numb, and a short while later, he experienced significant pain. Medical testimony offered by the state showed that the trooper had suffered a dislocation of his shoulder. The injury was surgically repaired, and the trooper underwent physical therapy to rehabilitate and stabilize his shoulder.

Following the injury to Trooper Mooneyham, the defendant fought through Trooper Osborne's efforts to restrain him and began to run away. Trooper Mooneyham, thinking that the defendant may have obtained Trooper Osborne's service weapon, fired three shots into the earthen berm along the highway while ordering the defendant to stop. Undeterred, the defendant ran across the Interstate highway and scaled a fence on the other side. Trooper Mooneyham pursued him on foot but was impeded in crossing the fence because of his inability to use his left arm. The defendant eluded the trooper in a residential area.

Approximately two hours later, a police officer arrested the defendant as he emerged into a street from a wooded area. The defendant wore only a sleeveless undershirt, a pair of shorts, and sneakers.

In contrast to the above evidence offered by the prosecution, the defendant testified that he had negotiated a price for the 1996 Cadillac, he left his license with the sales manager, and when he left the lot with Henry, they had only gone a short distance when Henry saw his friend working on a car. Henry wanted to get out and told the defendant that he could give him $600 as a down payment, take the car on to the hospital, and the dealer would have a 30-day temporary tag for him when he returned. He testified that he counted out $600 of the $6,200 purchase money he carried, gave the down payment to Henry, and laid the rest of the cash in the passenger seat. He denied ejecting Henry from the car. He denied that the doors on the Cadillac could be unlocked or opened with the car in motion.

The defendant testified that he was traveling about 75 or 80 miles per hour when the trooper stopped him. He claimed to have left the cash on the seat in the Cadillac when the trooper placed him in the cruiser. He testified that he falsely identified himself after the trooper told him that, without identification, he would be "booked" as a "John Doe." When the trooper later entered the cruiser to handcuff him, he thought the trooper was trying to choke him. He became frightened and began to struggle. He denied any intent to injure the officer. He got away from both troopers and ran. He claimed to have discarded his shirt and trousers after his trousers were ripped up by a barbed wire fence. He never saw his $5,600 again.

The state offered rebuttal witnesses to establish that no person bearing the name given by the defendant to the trooper as the patient in the Bristol hospital was admitted as a patient there,

that the car dealer's sales manager did not obtain the defendant's driver's license, and that no cash was found in the Cadillac.

## I. Sufficiency of the Evidence.

In the defendant's first issue, he challenges the sufficiency of the evidence supporting the aggravated assault conviction. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Cabbage,* 571 S.W.2d at 835.

As alleged in the indictment, aggravated assault is committed by one who "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [c]auses serious bodily injury to another." Tenn. Code Ann. § 39-13-102(a) (2003). Code section 39-13-101(a)(1) provides, in pertinent part, that a person commits assault who intentionally, knowingly or recklessly causes bodily injury to another. *Id.* § 39-13-101(a)(1) (2003). "'Serious bodily injury' means bodily injury which involves . . . [e]xtreme physical pain[, p]rotracted or obvious disfigurement[,] or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." *Id.* § 39-11-106(a)(34) (2003).

In the present case, the defendant challenges the sufficiency of the evidence of his aggravated assault conviction by claiming the state failed to establish a serious bodily injury and the required mental state of intentional or knowing.

## A. Serious Bodily Injury.

We hold that the evidence shows that the victim suffered a serious bodily injury. The victim, Trooper Mooneyham, testified that he experienced intense pain, not only from the injury itself but also from the post-operative rehabilitation. His orthopedic physician testified that the force of the blow dislodged the collar bone from its place of attachment to the shoulder blade. When the victim came to the hospital, the collar bone was elevated above his shoulder. The doctor performed

surgery to re-attach the collar bone to the shoulder blade via the insertion of screws, and he inserted metal sutures to re-attach the ligaments to the tip of the collar bone. He testified that, without this procedure, the victim would have to rely upon the development of scar tissue to stabilize the collar bone, but he opined that this latter approach would only be feasible for someone with a sedentary job. The doctor opined that the injury, a grade three displacement, was a severe injury and that it produces severe pain requiring narcotic analgesics to control. Specifically, he testified that the victim was in "pretty significant pain."

This evidence establishes that the victim experienced "extreme physical pain," and accordingly, it establishes the serious bodily injury element of Class C aggravated assault.

**B. Scienter.**

Next, we consider the scienter requirement for Class C aggravated assault as alleged in the indictment. To support the conviction, the evidence must show that the defendant acted intentionally or knowingly to cause serious bodily injury. Thus, we need not concern ourselves with whether the defendant acted intentionally if the evidence supports a finding that he acted knowingly. "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20) (2003).

We hold that the evidence sufficiently supports a finding that the defendant was aware that forcefully kicking the trooper was reasonably certain to result in serious bodily injury. In the light most favorable to the state, the evidence shows that the defendant tried to escape from the cruiser each time a rear door was opened. In the resulting struggle to subdue the defendant, the trooper "flipped" the defendant so that he was facing up with his feet positioned toward Trooper Mooneyham. When Trooper Osborne opened the other door, the defendant moved his head toward her and pinned her against the door. Thus braced, he was able to use greater force in striking at Trooper Mooneyham with his foot. He struck with enough force to dislocate the trooper's shoulder and cause immediate numbness. Although the trooper was larger than the defendant, the defendant testified that he had enough athletic prowess to have previously secured a partial scholarship to play football at the University of Tennessee, Chattanooga. The jury was justified in inferring from all of the circumstances that the defendant was aware that if he connected with a forceful kick about the trooper's head, neck, or shoulders, serious bodily injury was reasonably certain to result.

We acknowledge that the defendant testified that he was frightened by the trooper's command that he lay in the seat and by the trooper's placing his hands around the defendant's throat. He claimed that his kicking the trooper was merely an instinctive reaction to fear and desperation. In this sufficiency-of-the-evidence issue, however, it is axiomatic that the jury was the final arbiter of factual issues, including the credibility of witnesses and the weight to be given their testimony. In our view, Trooper Mooneyham offered an alternative view of the defendant's actions which, when accredited by the jury, supplied a basis for concluding that the defendant acted knowingly. Because

-5-

we do not second-guess the jury on its resolution of credibility issues and do not reweigh the evidence, the jury's determination stands.

## II.  Sentencing Issues.

In his next issue, the defendant challenges the sentencing determinations of the trial court.  Specifically, he challenges the length of the felony sentences, the imposition of consecutive sentences, and the denial of alternative sentencing.

We begin by reviewing familiar rules for appellate review of sentencing terms.  When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d) (2003).  This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances, and the burden of showing that the sentence is improper is upon the appellant.  *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).  In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.*  If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result."  *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing and after determining the range of sentence and the specific sentence, then determines the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-210(a), (b) (2003), -103(5) (2003); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.  Tenn. Code Ann. § 40-35-102(6) (2003).  Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id.* § 40-35-102(5) (2003).  Thus, a defendant who meets the above criteria is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption.  However, the Act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case.  *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

## A.  Length of Sentence.

As explained below, we have determined that the trial court misapplied some enhancements, based on state law.  For this reason, we review the determination of sentence length without a presumption of correctness.  *State v. Kelley*, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *State v. Vincent Howard*, No. W2001-01904-CCA-R3-CD, slip op. at 8 (Tenn. Crim. App., Jackson, Apr. 11, 2003), *perm. app. denied* (Tenn. 2003).  The trial court sentenced the defendant to Range I terms of six years for aggravated assault and four years for theft, the maximum sentences for the respective Class C and D felonies.  The trial court applied the following sentencing enhancement factors set forth in Tennessee Code Annotated section 40-35-114: (2) the defendant had a previous history of criminal convictions or behavior; (7) the injuries inflicted upon the victim were particularly great; (11) the defendant had no hesitation about committing a crime when the risk to human life was high; and  (17) the offenses were committed under circumstances under which the potential for bodily injury to a victim was great.  Tenn. Code Ann. § 40-35-114 (2), (7), (11), (17) (2003).  The trial court also applied the enhancement factor set forth in Code section 39-13-102(d)(1), that the victim of the aggravated assault was a law enforcement officer who was performing an official duty.  *Id*. § 39-13-102(d)(1) (2003).   In mitigation, the court gave slight weight to the defendant's work history.  *See id.* § 40-35-113(13) (2003).

### (1) Aggravated Assault Conviction.

The trial court applied enhancement factor (2), a previous history of criminal convictions or behavior, based upon the defendant's Virginia record of a conviction of possession of a firearm while in the possession of cocaine and two convictions of possession of cocaine. Essentially, the defendant complains that the trial court's heavy weighing of this factor was error because the three convictions were based upon offenses that occurred within a six-week time period in 1991, when the defendant was 20 years old.  We agree with the state, however, that the weight to be accorded applicable enhancement factors is entrusted to the discretion of the trial court.  *See, e.g., State v. Mickens*, 123 S.W.3d 355, 393 (Tenn. Crim. App. 2003), *perm. app. denied* (Tenn. 2003). The defendant's criminal record is not insubstantial, and the trial court acted within its discretion in according it significant weight in sentencing for aggravated assault.

The trial court applied enhancement factor (7), the victim's particularly great personal injuries, in light of the extent of the injury to Trooper Mooneyham.  The defendant claims that this factor is inapt because it is redundant of an element of the offense -- that of serious bodily injury. The state concedes that the trial court improperly applied factor (7).  This concession is well received.  In *State v. Jones*, 883 S.W.2d 597 (Tenn. 1994), our supreme court held that factor (7) "is an element of the offense of aggravated assault causing serious bodily injury and cannot be used to enhance the defendant's sentence."  *Id.* at 602; *see* Tenn. Code Ann. § 40-35-115 (2003) (otherwise appropriate enhancement factors may be applied when "not themselves essential elements of the offense as charged in the indictment").  Thus, factor (7) should not have been applied to the aggravated assault conviction.

The trial court applied enhancement factor (11), the presence of high risk to human life, and factor (17), the presence of circumstances under which the potential for bodily injury to a victim was great, based upon the risk posed to Trooper Osborne when the defendant initiated a physical altercation on the side of a busy Interstate highway. The trial court relied upon the cruiser's videotape showing traffic passing by the cruiser at high speeds. The defendant argues that factors (11) and (17) are inapplicable because the jury acquitted the defendant of assault of Trooper Osborne, and in any event, the factor does not apply to the theft offense because "the facts of the confrontation do not relate to the facts of the theft of the vehicle." The state claims that factor (11) is applicable in view of the risk posed to Trooper Osborne. It concedes that factor (17) is inapplicable.

An otherwise appropriate enhancement factor may be applied when it illustrates "culpability beyond that necessary for conviction of a charged offense." *Jones*, 883 S.W.2d at 603. Such is the case with factor (11) when the risk is posed to a human life other than that of the specified victim. *Id.*; *see State v. Imfeld*, 70 S.W.3d 698, 706-07 (Tenn. 2002). We believe that the trial court in the present case articulated a reasonable basis for concluding that the defendant's actions posed a risk to the life of Trooper Osborne. As shown by testimony and the cruiser's videotape, the altercation occurred alongside a busy Interstate highway. The speed limit was 70 miles per hour. In our view, physical combat so proximate to the open lanes of the Interstate posed a risk to the life of Trooper Osborne. Thus, we discern a basis for applying factor (11) to the aggravated assault conviction. *See Imfeld*, 70 S.W.3d at 707.

Resolving whether factor (17) applies is more difficult. In *Imfeld*, the supreme court ruled that factor (17) could not be applied in an aggravated assault case on the basis of a great potential for bodily injury to a person other than the named victim. *Id.* at 706. This ruling, however, adjudicates the aptness of factor (17) in an aggravated assault committed via reckless bodily injury "*with a deadly weapon*." *Id.* (emphasis added). Thus, although *Imfeld* tells us that the trial court in the present case could not utilize factor (17) on the basis of Trooper Osborne's presence during the offense of aggravated assault, it does not speak to whether the factor illustrates an element of the offense of aggravated assault against the *named victim*, Trooper Mooneyham. In *State v. Marquez Winters,* No. W2001-00740-CCA-R3-CD (Tenn. Crim. App., Jackson, Oct. 15, 2002), *perm. app. denied* (Tenn. 2003), however, this court held that enhancement factor (17)'s clause, "committed under circumstances under which the potential for bodily injury to a victim was great," is "essentially. . . an element of the offense" of aggravated kidnapping, of which "serious bodily injury" is an element. *Id.*, slip op. at 9. We believe *Marquez Winters* applies by analogy and controls. Thus, we hold that factor (17) was inapplicable to sentencing for aggravated assault.

By the terms of Code section 39-13-102(d)(1), the legislature has mandated that the trial court "*shall* consider as an enhancement factor [in] sentencing that the victim of the aggravated assault was a law enforcement officer . . . [who was] performing an official duty." Tenn. Code Ann. § 39-31-102(d)(1) (2003) (emphasis added). Clearly, this factor applies to the aggravated assault conviction in the present case. It is deserving of significant weight, as the trial court found.

To summarize, the trial court pursuant to state law justifiably enhanced the defendant's aggravated assault sentence by the use of Code section 40-35-114's factors (2) and (11), as well as by the mandatory factor found in section 39-13-102(d)(1). The court erred in applying enhancement factors (7) and (17).

## (2) Theft Conviction.

We must now determine whether the lower court erred in applying any of the above-mentioned enhancement factors in imposing the maximum four-year sentence for theft.

To be sure, the factor of prior criminal record applies with equal force to the theft conviction. That said, we hold that the other factors used to enhance the aggravated assault sentence are inapplicable to the sentence for theft. Of course, the enhancement factor stated in Code section 39-13-102(d)(1) is, by definition, limited to application in aggravated assault cases.[1] The remaining section 40-35-114 factors -- (7), (11), and (17) -- are inapplicable due to their lack of temporal connection to the theft offense.

The trial court applied factors (7), (11), and (17) at least to the aggravated assault sentence based upon the nature and character of the defendant's assaultive conduct after his arrest. We hold that, regardless whether the theft offense had been completed at some time prior to the defendant's arrest and placement in custody, the theft at any rate ended upon his arrest and placement in the secure cruiser.

Beginning with the 1989 sentencing law, our law has not been homogeneous in its views of the scope and duration of a theft. A certain lack of clarity has emanated from the change in the language of the proscriptive statute. Formerly, "larceny" was proscribed as an unlawful taking and asportation of the personal property of another. *See* Tenn. Code Ann. § 39-2-202 (1982) (repealed 1989). As such, the elements focused upon finite concepts of action -- "taking" and "carrying away" of the goods. The 1989 law changed the proscription to "knowingly obtain[ing] or exercis[ing] control over the property without the owner's effective consent," with intent to deprive the owner of the property. *See id.* § 39-14-103 (2003). By proscribing not only obtaining the property but exercising control over it, the new statute potentially extended the duration of the theft offense; one could exercise control over another's property indefinitely. Through this language, the potential scope of a theft offense is not only expansive temporally, but also the venue statute lends a potential for broad geographical application. *See id.* § 39-11-103(d) (2003) (offense may be prosecuted in two or more counties when "one (1) or more elements . . . are committed" in each of two or more counties).

In *State v. Frederick Lamar Dixon*, No. W2000-00577-CCA-R3-CD (Tenn. Crim. App., Jackson, Mar. 19, 2001), this court considered whether a shoplifting theft had been completed

---

[1] In actuality, the record is unclear but suggests that the trial court applied this factor only to the aggravated assault sentence.

-9-

for purposes of adjudicating whether the theft was integral to a robbery. The defendant in that case shoplifted merchandise from The Home Depot. After he left the store, he was accosted by store security personnel, whom he assaulted. *Id.*, slip op. at 2. For purposes of adjudicating whether the defendant had committed robbery or merely theft, the court held that the theft had been completed prior to the defendant's assaultive conduct. *Id.*, slip op. at 4-5. In the past, it has been important to determine the time when a shoplifting was complete in order to adjudicate whether an abandonment of the offense was afoot. *See, e.g., State v. Larry Jackson*, No. 86-31-III, slip op. at 3 (Tenn. Crim. App., Nashville, May 12, 1987) ("The defense of abandonment is not available to a defendant if the offense of shoplifting has been completed. The offense of shoplifting is committed by taking possession of merchandise with intent to convert without paying the stated price. Proof of concealment of unpurchased goods is circumstantial evidence of an intent to shoplift. . . . There is simply no evidence that the appellant had abandoned his plan to shoplift prior to being discovered and in the process of being apprehended.") (citation omitted). Against this backdrop emanating from the pre-1989 law, the *Frederick Lamar Dixon* court held that the theft had been completed, even though the defendant had walked only a few feet beyond the exterior of The Home Depot when he was challenged. *Frederick Lamar Dixon*, slip op. at 4-5.

This result is seemingly at odds with our supreme court's decision in *State v. Pierce*, 23 S.W.3d 289 (Tenn. 2000). In *Pierce*, a vehicle had been stolen in Florida, and three weeks later, the vehicle, driven by Pierce and pursued by police, crashed into a roadblock and killed a police officer. *Id.* at 291-93. The issue before the court was whether the evidence supported a verdict of felony murder "committed in perpetration of or attempt to perpetrate any . . . theft." *Id.* at 294; *see* Tenn. Code Ann. § 39-13-202(a)(2) (2003) (proscribing felony murder). At least for purposes of construing the meaning of "in perpetration of" in the felony murder statute, the court said that the analysis seeks a close connection in time, place, causation, and continuity of action between the "initial taking and the killing." *Pierce*, 23 S.W.2d at 294, 296. In particular, the court said, "One of the most important factors to consider in determining whether there has been a break in the chain of events that would preclude application of the felony murder rule is whether the felon has reached a place of temporary safety." *Id.* at 295. In *Pierce*, the court held that the connection between the initial taking and the killing was too attenuated to support a finding that the homicide was committed in perpetration of a killing. *Id.* at 297. It reversed the conviction and remanded for retrial on lesser-included offenses.

We realize that the rule applied in *Frederick Lamar Dixon* was formulated for shoplifting, which before 1989 was a separate rubric of larceny. We also realize that, in *Pierce*, the supreme court was specifically adjudicating the meaning of the felony murder statute. Still, the seemingly disparate results make it difficult to pinpoint, for purposes of sentence enhancement, when the offense of theft comes to an end. For instance, it can hardly be said that Dixon had traveled long or far or had reached a place of safety when he was accosted a few feet outside The Home Depot door.

We believe, however, that regardless whether the defendant's theft came to an end when he left Henry afoot on the Interstate ramp or at some literal -- or figurative -- milestone along

-10-

his way to Sullivan County, the theft was certainly completed after the defendant had been removed from the stolen car, placed inside a secure police cruiser, and told he was under arrest. *See State v. Colico S. Walls*, No.W2000-00637-CCA-MR3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, Feb. 15, 200l) (ruling that, as a detainee in patrol car, defendant was in formal police custody), *aff'd in part and rev'd in part*, 62 S.W.3d 119 (Tenn. 2001) (defendant's flight from rear of patrol car did not constitute escape from a penal institution). We believe that these events collectively equated to "a break in the chain of events." *Pierce*, 23 S.W.3d at 295. As such, the theft ended prior to the behavior putatively giving rise to the application of enhancement factors (7), (11), and (17). These factors should not have been applied to the theft sentence.

### (3) *Blakely v. Washington*.

Now, having performed our statutory *de novo* analysis of the lengths of the aggravated assault and theft sentences, we must take into account the impact of the federal constitutional guarantee of the right to jury trial. *See* U.S. Const. amend VI.

In *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004), the United States Supreme Court held that Blakely's constitutional rights to a jury trial were violated when the trial judge, based upon facts he found without the aid of a jury, imposed a sentence in excess of the "maximum" he could have otherwise imposed under state law "without the challenged factual finding." *Id.* at ___, 124 S. Ct. at 2536-38. The "maximum" sentence for purposes of *Blakely* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at ___, 124 S. Ct. at 2537 (emphasis in original). The statutory maximum the court may impose is the maximum "he may impose *without* any additional findings." *Id.*, 124 S. Ct. at 2537 (emphasis in original). "When a judge inflicts punishment that the jury's verdict [or guilty plea] alone does not allow, [a] jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority." *Id.*, 124 S. Ct. at 2537 (citation omitted). The single exception to this rule is that state law may authorize a trial judge to increase a sentence beyond the minimum based upon "the fact of a prior conviction." *Id.* at ___, 124 S. Ct. at 2536; *see Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362 (2000).

Apparently, *Blakely* signals certain infirmities in Tennessee's sentencing scheme. One such infirmity is the procedure for determining the length of a defendant's sentence. Tennessee Code Annotated section 40-35-210(c) establishes presumptive sentences. *See* Tenn. Code Ann. § 40-35-210(c) (2003). When there are no enhancement or mitigating factors, the presumptive sentence for a Class A felony shall be the midpoint of the range, and the presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range. *Id.* The trial court may impose a sentence in excess of the presumptive sentence only when it finds the existence of one or more enhancement factors enumerated in Code section 40-35-114. *Id.* § 40-35-210(d), (e) (2003). Thus, the court may not increase the sentence above the presumptive or "maximum" without additional findings of fact.

Pursuant to *Blakely* and *Apprendi*, as noted above, a record of prior convictions is a basis for sentence enhancement despite the lack of a jury finding. The trial court relied heavily upon the defendant's record of prior convictions.

In the present case, however, sentence enhancement based upon section 40-35-114's factor (11) requires a jury finding, and accordingly, this factor should be disregarded pursuant to *Blakely*. Additionally, we determined above that state law, through Code section 39-13-102(d)(1), mandates enhancement of the aggravated assault sentence on the basis of the victim being a law enforcement officer performing his official duties. That finding should be made by a jury pursuant to *Blakely*.

We have considered that there is no reasonable possibility that a jury would not have applied the factor to enhance the aggravated assault conviction, that the statute *requires* consideration of the factor when the victim is a law enforcement officer performing his official duties, and that no reasonable dispute arose about either Trooper Mooneyham's status as a law enforcement officer or his performance of official duties at the time the offense was committed. Thus, under the facts and the state law that applies to the facts, we have considered whether the trial court's enhancement pursuant to Code section 39-13-102(d)(1) is harmless error beyond a reasonable doubt. *See, e.g., Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 1839 (1999) ("[A] court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect [to an offense element not being submitted to the jury]. If the answer to that question is 'no,' holding the error harmless does not 'reflect a denigration of the constitutional rights involved.'"); *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002) ("When a lesser-included offense instruction is improperly omitted [in violation of the right to trial by jury], . . . the harmless error inquiry is the same as for other constitutional errors: whether it appears beyond a reasonable doubt that the error did not affect the outcome of the trial."). In the final analysis, however, we decline to apply the harmless-error rule. Unlike the cases cited above wherein the jury trial violation occurred during the defendant's trial on the merits and was reviewed on appeal in the context of a guilty verdict returned by the jury, the jury trial violation posed in the present case occurred during sentencing. Our review of the sentence is *de novo*. Even if it were harmless error to apply the enhancement factor of section 39-13-102(d)(1) without the participation of a jury, it would still be error, and it would be unfit for us, as an appellate court exercising *de novo* review, to perpetrate the same error we have discerned in the trial court's actions, harmless or otherwise. Thus, we conclude that *Blakely* forbids the use of section 39-13-102(d)(1) to enhance the aggravated assault conviction.

### (4) Length of Sentence Adjudication.

To summarize our conclusions pursuant to both state sentencing law and applicable constitutional principles, the trial court properly enhanced both the aggravated assault and theft convictions through its heavy reliance upon the defendant's prior conviction record. Pursuant to our *de novo* review, we conclude that this factor underlying the aggravated assault sentence warrants enhancement to five years -- one year less than the sentence imposed by the trial court. In like manner, we conclude that the prior conviction factor warrants enhancement of the theft sentence

from two to three years -- one year less than the sentence imposed by the trial court. The result is that we modify both the sentence for aggravated assault (to five years) and the sentence for theft (to three years).

## B. Consecutive sentencing.

The defendant claims that the trial court erred in ordering that the sentences for aggravated assault, theft, and misdemeanor evading arrest be served consecutively, yielding an effective sentence of ten years, eleven months, and 29 days. The trial court must order concurrent service of multiple sentences unless it finds that a statutory basis for consecutive sentencing applies. *See* Tenn. Code Ann. § 40-35-115(b)-(d) (2003) (enumerating bases for consecutive sentencing and specifying concurrent sentencing as a baseline). The basis used by the trial court was that the defendant is a dangerous offender "whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *See id.* § 40-35-115(b)(4) (2003).

With high and due respect to the trial court's thorough and conscientious sentencing analysis, we disagree that the defendant meets the standard for a dangerous offender. To be sure, he committed serious offenses, and as we have said above, the aggravated assault offense in particular warrants a sentence in the high portion of the range. On the other hand, the defendant has never been convicted previously of a violent offense, and he used no weapon to commit the offenses in the present case. Moreover, the jury acquitted the defendant of assaulting Trooper Osborne. Thus, the use of the dangerous-offender basis to justify consecutive sentencing is not supported in the record.

In this circumstance, we have considered whether "[t]he defendant is an offender whose record of criminal activity is extensive," the basis for consecutive sentencing set forth in Code section 40-35-115(b)(2). He garnered three Virginia felony convictions in 1991, but from the record before us, the convictions resulted from two acts of cocaine possession and one of possession of a gun, all during a six-week period when he was 20 years of age. The state offered no evidence of criminal convictions after 1991, until the convictions in the present case were imposed. We are hard-pressed, therefore, to find that the defendant's record of criminal activity is extensive. Moreover, no other bases for consecutive sentencing are remotely applicable in the present case.

When the criteria for consecutive sentencing contained in section 40-35-115(b) are not met, "sentences shall be ordered to run concurrently, . . . unless consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure." Tenn. Code Ann. § 40-35-115(d) (2003). We know of no statutory or rule provision that would require consecutive sentencing in the present case. Therefore, the sentences that have now been authorized by this opinion will be served concurrently.

### III. Alternative Sentencing.

In his final sentencing challenge, the defendant claims that he should have been placed on probation or awarded some other form of alternative sentencing. Being a standard offender convicted of a Class C felony and of lesser offenses, the defendant is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (2003). Not everyone who enjoys favorable candidacy status, however, will be awarded an alternative sentence to confinement. A sentence of total confinement may be imposed, and the presumption of favorable candidacy for alternative sentencing is overcome, when:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2003); *see State v. David Wayne Fountain*, No. E2002-01066-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Apr. 22, 2003), *perm. app. denied* (Tenn. 2003).

The defendant was eligible for probation. *See* Tenn. Code Ann. § 40-35-303(a) (2003). Determining entitlement to full probation, however, necessarily requires a separate inquiry from that of determining whether a defendant is entitled to an alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995)*, overruled on other grounds by State v. Hooper,* 29 S.W.3d 1 (Tenn. 2000). A defendant "is required to establish his suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* Tenn. Code Ann. § 40-35-303(b) (2003); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

The potential for a defendant's rehabilitation or treatment is an important factor in determining the aptness of sentencing alternatives. *See* Tenn. Code Ann. § 40-35-103(5) (2003) ("The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed."). Lack of candor and credibility are reliable indications of a defendant's potential for rehabilitation. *State v.*

*Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995).

The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation. *State v. Glenda Eva Tilley*, No. E2001-00264-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Aug. 9, 2001). The trial court in this case found that the defendant lacked credibility and evinced a poor potential for rehabilitation and that confinement was necessary to avoid depreciating the seriousness of the offense.

We initially determine that the defendant failed to carry his burden of showing his entitlement to full probation. His prospects for rehabilitation appear to be poor, based upon his lack of remorse concerning the injury to Trooper Mooneyham and his lack of credibility. The information imparted to Trooper Mooneyham following the traffic stop teemed with prevarications, and more importantly, his sworn trial testimony was unworthy of credit. In our view, the defendant proved himself a prodigious fount of mendacity, and as a result, he made no case for probation.

The trial court based its denial of any alternative sentencing option upon the need to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B) (2003). When the presumption of favorable candidacy for alternative sentencing applies and the state seeks only to rebut it via Code section 40-35-103(1)(B) by showing that confinement is necessary to avoid depreciating the seriousness of the offense, a resulting trial court decision to impose total confinement must be predicated upon a finding that the nature and circumstances of the offense are "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring probation. *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981); *see State v. Hartley*, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991) (*Travis* qualifiers of nature and circumstances of offense have been codified in section 40-35-103(1)(B)'s provision for confinement to avoid depreciating the seriousness of the offense).

Looking at the felony conviction offenses, we hold that the nature and circumstances of the offenses meet the *Travis* standard. The theft was of an excessive or exaggerated degree; the defendant convinced the owner of a $6,200 automobile to allow him to test drive it and then shoved the owner's agent out of the car and sped away.

We believe the aggravated assault was especially reprehensible and offensive in view of the victim being an officer of the law. Indeed, our legislature has declared its disdain for assaults upon law enforcement officers by enacting Code section 39-13-102(d)(1), as we have shown above. Even if a similar assault committed against a private citizen might be viewed as not qualifying under *Travis-Hartley*, we believe that this assault qualifies through its forcefulness *and* the victim's status as a law enforcement officer performing his sworn duty to uphold the law. We believe that these circumstances of the offense outweigh all others favoring alternative sentencing.

-15-

We, therefore, hold that the trial court did not err in denying probation or any other form of alternative sentencing.

### III. Conclusion.

The conviction of aggravated assault is affirmed. The sentences are modified as follows: The sentence for aggravated assault is five years, and the sentence for theft is three years. All sentences imposed in this case shall run concurrently. The order to serve the effective sentence in confinement is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE