# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### May 2007 Session

## STATE OF TENNESSEE v. BENJAMIN ASHLEY RAY DICKENS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-D-3151   Seth Norman, Judge**

---

**No. M2006-01697-CCA-R3-CD** - Filed July 10, 2007

---

The Defendant, Benjamin Ashley Ray Dickens, was convicted of first degree felony murder.  On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction.  After a thorough review of the record, we conclude that the evidence is sufficient to sustain the conviction, and we therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the Appellant, Benjamin Ashley Ray Dickens.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; Paul Dewitt and Dan Ham, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION
### I.  Facts

This appeal arises from the Defendant's conviction for the first degree felony murder of Justin Green.  At the Defendant's trial, the following evidence was presented:  Mary Jane Crockett Green, Justin Green's mother, testified that at the time of Justin's murder she lived with him and her other son who was Justin's half-brother, Christopher Crockett, Christopher's girlfriend, Arenthia Burkeen, and their two children.  They all lived in a one-level home, and Justin and Christopher had bedrooms located next to each other, both of which were in the front of the house.

On the night of this murder, Green awoke when her dog barked viciously.  She went to her bedroom door and saw Crockett standing with his hands in the air while the Defendant pressed a gun into Crockett's chest.  She startled the Defendant, and he turned and pointed the gun at her.  Then, the Defendant turned and pointed the gun at the dog who had begun to attack him.  The Defendant

threatened to kill the dog, and Crockett told the Defendant that he could take the dog somewhere else. Crockett led the dog down a hallway into a den. Green asked the Defendant not to hurt anyone, and then she heard gunfire from the front of the house. She explained that she and the Defendant could not see the area of the gunfire from where they were standing.

Green testified that the gunfire appeared to frighten everyone, and she ran into her bedroom. She saw the Defendant run toward the back door and Crockett run down the hallway. Green testified that there was "gunfire everywhere," and she went to her bathroom and then back to her bedroom door. There, she saw a different man run out the back door, followed by Crockett, who was carrying a gun. Shortly thereafter, Crockett came back inside the house and locked the door. Green entered Justin's room and saw that he was lying unconscious face down on his stomach. She attempted to perform C.P.R. on him while Burkeen called 9-1-1. The police arrived shortly thereafter. Green heard a policeman call for the homicide squad and knew that her son was dead.

Christopher Crockett testified that he and Justin had been playing video games in Justin's room when this crime occurred. The Defendant entered the room, pointed a gun at Crockett, and asked Crockett to take him to "the money." Crockett began to take the Defendant to where some money was located but stopped after Crockett's dog attacked the Defendant. The Defendant threatened to kill Crockett's dog but allowed Crockett to take his dog to a different room. Another intruder came into the house, ran toward Justin's bedroom, and then gunfire erupted from that area of the house. Crockett ran toward the front of the house, the Defendant shot at Crockett, and the second intruder came running out of Justin's bedroom. Crockett fought with the second man and took his gun, which Crockett dropped on the ground because it did not work. Crockett retrieved his own gun from his room. The Defendant and the other intruder, who were standing near the back door, shot at Crockett, and Crockett shot back. The Defendant then got the other man out of the house, and both men ran out the back door. Crockett tried to chase these men, and they both shot at Crockett. On cross-examination, Crockett testified that the Defendant shot at anyone who was in the second intruder's way. He acknowledged that the second intruder was injured, and the Defendant assisted the second intruder in escaping from the house while Crockett was shooting at them.

Arenthia Nicole Burkeen testified that on the night of the crime the Defendant, who had a gun, came into her room and told her to give him her cell phone. Burkeen later heard gun shots. After the gun shots had ceased and she felt safe, she emerged from her room. Burkeen and Green went into Justin's room where they discovered that Justin had been injured, so Burkeen called 9-1-1.

Various police officers described their involvement with the investigation of this crime. Officer Carlos Anderson testified that he arrived at the crime scene and observed Justin Green who had been shot. Justin had short and raspy breath, and Officer Anderson performed C.P.R. He saw blood stains and bullet holes in the hallway area leading toward the back of the house. Detective Joe Williams testified that he attended the victim's autopsy and obtained the bullet retrieved from Justin's body. Sergeant Danny Orr testified that he found three different weapons at the crime scene. Officer Charles Lindville testified that he found shell casings outside the home where the crime occurred. Micheal L. Pyburn testified that he examined guns and bullets that were retrieved from

the crime scene.

Dr. Stacy Turner testified that she performed an autopsy on Justin's body. She said he died from a gunshot wound to the chest, and she removed the bullet from his body. A toxicology report was performed, and no drugs or alcohol were found in the victim's blood.

Based upon this evidence the Defendant was convicted of first degree felony murder.

## II. Analysis

On appeal, the Defendant contends that the evidence is insufficient to sustain his conviction. Specifically, he contends that the evidence presented at trial did not connect the Defendant's robbery attempt to the victim's murder. He asserts that the victim's death was collateral to, rather than in furtherance of, the Defendant's attempt to rob the victim. The State contends that the evidence presented at trial was sufficient to support the jury's finding that the Defendant was guilty of first degree felony murder and that the evidence sufficiently connected the Defendant's attempted robbery to the victim's death. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass,* 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). If the State's evidence is based upon wholly circumstantial evidence, that evidence must be both consistent with guilt and inconsistent with innocence. *Pruitt v. State*, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs,* 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State,* 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775. Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *See State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Pursuant to Tennessee Code Annotated section 39-13-202(2) (2003), the killing of another committed in the perpetration of or attempt to perpetrate any robbery constitutes first degree murder.

Responsibility for the death of any individual resulting from robbery or attempted robbery falls upon all those involved in the crime, regardless of who actually fired the deadly shot and whether the killing was specifically contemplated by the other parties involved with the offense. *State v. Mickens*, 123 S.W.3d 355, 369 (Tenn. Crim. App. 2003). If murder is committed pursuant to a robbery, the killing must "be closely connected to the initial taking of the property in time, place, causation, and continuity of action." *State v. Pierce*, 23 S.W.3d 289, 295 (Tenn. 2000). If, on the other hand, there "is a break in the chain of events between the felony and the killing, the felony murder rule does not apply." *Id.* at 295.

The evidence, viewed in the light most favorable to the State, proves that the Defendant and the second intruder worked as a team to commit a robbery and that the victim died as a result of their attempt to commit this robbery. The Defendant and the second intruder entered the home within the same time frame, and the two men left the home together, with the Defendant assisting the second intruder in leaving. Both the Defendant and the second intruder shot at Crockett after Crockett had retrieved his gun, and the Defendant shot at anyone who got in the way of the second intruder. A reasonable jury could infer that the gun shots that erupted from the area of Justin's room resulted in his death and that his death was perpetrated in furtherance of the robbery that the Defendant originally entered the residence to commit. The evidence presented at trial was sufficient to support the jury's finding that the Defendant was guilty of first degree felony murder.

### III. Conclusion

In accordance with the foregoing, the judgment of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

4