# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2010

## STATE OF TENNESSEE v. BRANDY LEA BIRDWELL

### Appeal from the Criminal Court for Davidson County
### No. 2008-A-88   Cheryl Blackburn, Judge

---

### No. M2009-00722-CCA-R3-CD - Filed September 15, 2010

---

Appellant, Brandy Lea Birdwell, was indicted by the Davidson County Grand Jury in January of 2008 for first degree felony murder and especially aggravated robbery for her involvement in a shooting at a liquor store. After a jury trial, Appellant was convicted of the charges. She was sentenced to life in prison for the first degree murder conviction and twenty years for the especially aggravated robbery conviction. The trial court ordered the sentences to run concurrently. Appellant filed an untimely motion for new trial which was denied by the trial court after a hearing. Subsequently, Appellant filed an untimely notice of appeal. This Court waived the timely filing of the notice of appeal. On appeal, Appellant challenges the sufficiency of the evidence for both convictions. After a thorough review of the record, we determine that the evidence was sufficient to support the convictions. Accordingly, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Paul J. Walwyn, Madison, Tennessee, for the appellant, Brandy Lea Birdwell.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General, and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

On November 6, 2007, Jared Collins was shot and killed in the parking lot of the Last Chance Liquor Store and Market on Dickerson Pike in Nashville, Tennessee. Appellant, Reginald Atkins, and Darrell Thompson were identified as suspects in the crime. In January of 2008, the three were indicted for first degree felony murder and especially aggravated robbery.

On November 6, 2007, Mr. Collins had gone to the liquor store around 5:00 p.m. Around that same time, Appellant decided to go to the store to get juice and cigarettes. Appellant drove her truck to the market along with Ralethia Mayfield, also known as "Tierra," Mr. Atkins, and Mr. Thompson. When they arrived at the market, Appellant parked the truck at the side of the store. The two men got out of the truck first while Appellant was getting a few things out of her purse. At that point, there are various accounts of what happened. Ultimately, as Mr. Collins was leaving the store, it appears that he was approached by Mr. Atkins and Mr. Thompson. The men started tussling. A witness heard one of the men demand "the damn money." Mr. Collins gave the men "everything he had" in his possession and turned to run into the market that was next door to the liquor store. As Mr. Collins ran away, one of the men shot him in the back. The gunshot was witnessed by the owner of the market, Tewodros Tashu. Mr. Tashu heard the shot and saw Mr. Collins literally fall through the door of the store. As he fell, he pleaded with Mr. Tashu to "save me, save me, this is all of the money I got." Mr. Collins died as a result of the gunshot wound to his back.

After the shooting, Mr. Atkins and Mr. Thompson were seen jumping into the back of a white Ford pickup truck. Appellant was identified as the driver of the truck by Christy Dean, Mr. Collins' friend and a passenger in his vehicle. Ms. Dean had previously seen Appellant driving the same truck at a neighbor's house. Ms. Dean also recognized the other two defendants from the same location.

Officer Po Cheng of the Metropolitan Nashville Police Department was on patrol at the time of the incident. As he was driving by the market, someone flagged him down. Officer Cheng realized that someone had been shot. He found Mr. Collins unresponsive.

The next day, Appellant was arrested by Detective Paul Harris. She was arrested at her residence, and the white Ford truck was seized. When the truck was searched, police recovered spent .38 caliber cartridge cases inside the front center console, a live .38 caliber

round from the driver-side door compartment, and two live .38 caliber rounds from Appellant's purse.

Four days later, Detective Harris executed a search warrant at Appellant's residence. When the residence was searched, a fully loaded .38 caliber revolver was recovered from inside a slow cooker. Appellant's mother informed the detective that she was the owner of the weapon. Appellant's mother was angry at Appellant when she noticed that the weapon was not in its usual spot on the bedside table the day after the shooting. Appellant's mother retrieved the gun from Appellant and put it in the slow cooker so that Appellant would not know where the gun was located.

A firearm identification analysis was performed by the Tennessee Bureau of Investigation. The results indicated that the bullet that killed Mr. Collins was fired from the gun seized at the Appellant's residence. In addition, spent cartridge cases in the truck and the home had also been fired from the same revolver.

Appellant testified on her own behalf at trial. She admitted that she knew both Mr. Atkins and Mr. Thompson. According to Appellant, on the day of the shooting, she got off work and went to a friend's house on Penncock Avenue. Mr. Atkins and Mr. Thompson were there, and everyone started drinking. Around 4:30 or 5:00 p.m., Appellant needed cigarettes and juice. Appellant, Mr. Atkins, Mr. Thompson, and Ms. Mayfield loaded up in the truck and went to the market.

When they arrived at the market, Appellant parked the truck on the side of the building. She let Mr. Atkins and Mr. Thompson out of the truck. Appellant riffled through her purse to find her driver's license. At that time, Ms. Mayfield exclaimed, "They got him, they got him." Appellant could not see what was going on from where she was standing, so she backed up and was able to see Mr. Atkins and Mr. Thompson engaged in an altercation. Appellant heard a gunshot. The next thing she knew, Mr. Atkins and Mr. Thompson were jumping in the back of the truck.

Appellant drove off down an alley to Cleveland Street. Once they got onto Ellington Parkway, Appellant pulled over and the men got inside the cab of the truck. Appellant claimed that she had no idea what had happened at the market. She continued to drive around Nashville as she was ordered to do so by Mr. Atkins and Mr. Thompson. Eventually, Appellant dropped the men off at a house in Madison. Appellant went home and went to bed. According to Appellant, she was surprised when she learned that her mother's gun was used in the crime. Further, Appellant insisted that she did not know that a robbery was going to occur.

At the conclusion of the proof, the jury convicted Appellant of first degree felony murder and especially aggravated robbery. Appellant was sentenced on August 21, 2008, to a life sentence for the first degree murder conviction, and sentenced on September 17, 2008, to twenty years for the especially aggravated robbery conviction.

Subsequently, Appellant filed an untimely motion for new trial on November 14, 2008. On February 27, 2009, Appellant filed an amended motion for new trial, in which she argued that: (1) the evidence was not sufficient to support the verdict; (2) the trial court erred in denying the motion for judgment of acquittal; and (3) the trial court erred in allowing testimony of a prior bad act of Appellant. The trial court denied the motion for new trial on February 29, 2009. Appellant filed a notice of appeal on March 26, 2009.

Once the notice of appeal was filed, Appellant filed a motion seeking to waive the timely filing of the notice of appeal. Appellant reasoned that because the motion for new trial was untimely, the statute of limitations for filing the notice of appeal had expired prior to the filing of the notice in this Court. This Court granted the motion, waiving the timely filing of the notice of appeal in the interest of justice.

*Analysis*

On appeal, Appellant challenges the sufficiency of the evidence. Specifically, she notes that she "was not tried as the shooter of the victim, but under the theory of criminal responsibility." Appellant stated that there is "no dispute" that she was the driver of the truck but there was "never any testimony that . . . [Appellant] knew that a robbery was to take place, or that she, in any way, promoted the robbery." Further, there was "no testimony that she benefitted in the proceeds of the robbery." In other words, Appellant argues that she lacked the "requisite intent" to commit the crime. The State, on the other hand, contends that the evidence is sufficient to establish Appellant's criminal responsibility for first degree murder and especially aggravated robbery.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the

accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

Felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." T.C.A. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts." T.C.A. § 39-13-202(b). Additionally, the death must occur "in the perpetration of" the enumerated felony. *State v. Hinton*, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000) (citations omitted). The killing may precede, coincide with, or follow the felony and still be in the perpetration of the felony, so long as there is a connection in time, place, and continuity of action. *State v. Buggs*, 995 S.W.2d 102, 106 (Tenn. 1999). If the underlying felony and killing were part of a continuous transaction with no break in the chain of events and the felon had not reached a place of temporary safety between the events, felony murder is sufficiently established. *State v. Pierce*, 23 S.W.3d 289, 294-97 (Tenn. 2000). Proof of the intention to commit the underlying felony and at what point it existed is a question of fact to be decided by the jury after consideration of all the facts and circumstances. *Buggs*, 995 S.W.2d at 107.

Especially aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" where the culprit uses a deadly weapon and causes seriously bodily injury to the victim. T.C.A. § § 39-13-401(a), -403(a).

"A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). Tennessee Code Annotated section 39-11-402(2) provides that an appellant is criminally responsible for the actions of another when, "[a]cting with intent to promote or assist the commission of the offense, or to

benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense . . . ." The appellant must "'in some way associate himself with the venture, act with knowledge that an offense is to be committed, and share in the criminal intent of the principal in the first degree.'" *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994) (quoting *Hembree v. State*, 546 S.W.2d 235, 239 (Tenn. Crim. App. 1976)). The appellant's requisite criminal intent may be inferred from his "presence, companionship, and conduct before and after the offense." *State v. McBee*, 644 S.W.2d 425, 428 (Tenn. Crim. App. 1982). "An indictment that charges an accused on the principal offense 'carries with it all the nuances of the offense,' including criminal responsibility." *State v. Lemacks*, 996 S.W.2d 166, 173 (Tenn. 1999) (quoting *State v. Lequire*, 634 S.W.2d 608, 615 (Tenn. Crim. App. 1981)). An appellant convicted under a criminal responsibility theory "is guilty in the same degree as the principal who committed the crime" and "is considered to be a principal offender." *Id.* at 171. Criminal responsibility is not a separate crime; rather, it is "solely a theory by which the State may prove the Appellant's guilt of the alleged offense . . . based upon the conduct of another person." *Lemacks*, 996 S.W.2d at 170. Under a theory of criminal responsibility, an individual's "[p]resence and companionship with the perpetrator of a felony before and after the commission of [an] offense are circumstances from which [his or her] participation in the crime may be inferred." *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). No particular act need be shown, and the Appellant need not have taken a physical part in the crime in order to be held criminally responsible. *Id.* The trial court instructed the jury on criminal responsibility as follows:

> The Defendant is criminally responsible as a party to an offense if the offense was committed by the Defendant's own conduct or by the conduct of another for which the Defendant is criminally responsible for or both. Each party of the offense may be charged with a commission of the offense. The Defendant is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense or to benefit in the proceeds or the results of the offense, the Defendant solicits[,] directs, aids, or attempts to aid another person in the commit [sic] of the offense. Mere presence is not sufficient to find a Defendant guilty for the criminal responsible [sic] of the offense committed by the conduct of another. However, presence of the Defendant is not required.

In the light most favorable to the State, a rational trier of fact could have found the elements of felony murder and especially aggravated robbery. The proof showed that Appellant, Mr. Atkins, Mr. Thompson, and Ms. Mayfield rode to the market in Appellant's truck. Appellant parked the truck on the side of the building and remained in the truck while

-6-

Mr. Atkins and Mr. Thompson got out of the truck. The men walked around to the front of the market, attacked the victim, and demanded his money. After the victim gave the men his money and tried to run away, one of them shot the victim in the back with Appellant's mother's gun. Immediately after the shooting, Appellant backed up her truck and allowed Mr. Atkins and Mr. Thompson to jump in the back of her truck. She drove the men around for a bit before stopping the truck and allowing them to get into the cab. They drove around for several hours before Appellant eventually took the men to a house in Madison. Appellant argues that because she was unaware that Mr. Atkins and Mr. Thompson were going to rob and kill the victim she cannot be guilty of felony murder or especially aggravated robbery. However, the jury was instructed on the theory of criminal responsibility, as described above. Appellant clearly associated herself with the robbery herein by acting as the getaway driver. Further, the murder weapon was found at Appellant's home and .38 caliber casings that matched the bullet that shot and killed the victim were found in her purse and in her truck. When the weapon was found, it was fully loaded. The jury could have inferred that Appellant knew that the gun had been used and reloaded it in an attempt to cover up the crime. The jury heard the evidence and determined that Appellant was criminally responsible for both the murder and robbery. The proof was sufficient to support Appellant's convictions for felony murder and especially aggravated robbery. Appellant is not entitled to relief on these issues.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JERRY L. SMITH, JUDGE