IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 1, 2008

**STATE OF TENNESSEE v. DERRICK SORRELL**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01955     John P. Colton, Jr., Judge**

**No. W2006-02766-CCA-R3-CD  - Filed April 8, 2009**

The defendant, Derrick Sorrell, was convicted of one count of first degree premeditated murder and one count of first degree felony murder. The trial court merged the convictions, and this appeal followed. On appeal, the defendant argues that the evidence was insufficient to support his convictions, that the indictment was improper, that the trial court improperly admitted evidence, and that the trial court did not adequately instruct the jury. After careful review, we conclude no reversible error exists and affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender, and Phyllis Aluko and Jim Hale, Assistant Public Defenders, for the appellant, Derrick Sorrell.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted of the killing of the victim, Mark Kent, while involved in a drug deal. At trial, Officer Richard Jewell, Jr. testified that he received a call informing him that a person had been seen slumped over the wheel of a car near East Parkway and Young. The officer said that he arrived at the parking lot of the Sunshine Car Wash and observed a Dodge Avenger Coupe parked about three feet from a pay phone. The officer observed the victim leaning forward in the seat with what appeared to be a gunshot wound to the side of his face.

Officer Adam Merritt testified that there was blood and brain matter inside the vehicle and that he did not attempt to open the car doors because there were no signs of life.

Officer Jewell testified that they opened the vehicle when the Crime Scene Unit arrived. Inside the vehicle, they observed that the rear seat had been "flipped up"and noticed the victim's blood on the center console. Officer Jewell opined that the console and the glove box had indentations consistent with someone trying to force them open.

Officer David Galloway, with the Crime Scene Unit, testified that he found a spent .380 caliber bullet casing behind the front driver's seat. The officer also testified that, outside the vehicle by the passenger door, they found a white paper that appeared to have blood on it.

Jerry Sims, a retired latent print examiner, testified that the bloody fingerprint on the piece of paper found in the victim's car belonged to the defendant.

Doctor Teresa Campbell, who performed the victim's autopsy, testified that the victim had two gunshot wounds to the head, one to the right side of his face and one behind his ear at the base of his skull. The doctor testified that the victim had a stippling pattern on his face that indicated the gun had been discharged within two feet of his face. She determined that the cause of death was multiple gunshot wounds. The doctor testified that the wound to the face would not have caused an immediate death, but the wound to the base of the skull would have caused instantaneous death.

Tiffany Dotson testified that she had lived with the victim for six or seven years. She testified that she last saw the victim at approximately 10:00 p.m. when he left the house to wash her car, a 1996 Dodge Avenger. She testified that she fell asleep, awoke about midnight, and realized the victim had not returned home. She called the victim on his cell phone but was unable to reach him. Dotson went back to sleep, woke up about 3:00 a.m., and again tried to call the victim. She said this was unusual and began to call the hospitals, the police, and the impound lot. She learned that her car had been involved in a homicide. She phoned the victim's father and told him what she knew. Dotson said that she listened to the voice mail messages from the victim's phone later that day and contacted the police to tell them she thought one message was important.

Officer James Fitzpatrick testified that he went to the scene of the homicide on June 19, 2001. He believed that the voice mail left on the victim's phone was an accidental recording. The officer said that the voice mail caught his attention because one of the individuals speaking said that he "searched up under his butt." The officer opined that someone had moved the victim around and searched underneath him. He further testified that he thought the conversation had something to do with the homicide.

Officer Fitzpatrick testified that he spoke with the defendant on October 29, 2001, and took a written statement from him. Initially, the defendant denied any knowledge of the killing. The officer told the defendant that they had his fingerprint from the crime scene, and the defendant denied that he had ever been to the car wash where the victim was slain. The defendant eventually acknowledged that he had spoken with the victim and had made an appointment to meet him at the car wash at East Parkway and Young. The defendant said he left before the victim was killed. The officer testified that he told the defendant it would not be possible for him to have left before the victim was killed because the defendant's fingerprint inside the car was made in the victim's blood.

The defendant told the officer that "David Covington" was the person who killed the victim. The defendant explained to the officer that he had arranged to meet the victim to purchase two ounces of cocaine. The defendant said he had forty dollars to buy the drugs and was concerned because forty dollars was typically not enough money to purchase one ounce of cocaine. The defendant said that during their negotiation, David Covington opened the passenger side door of the car and fired two shots. The defendant said that Mr. Covington ran around the car to the driver's side. The defendant said that he went to his car and left the car wash.

In his formal statement, the defendant denied shooting the victim. He maintained that David Covington shot the victim with a chrome .380 caliber pistol. The defendant said he had known Covington for ten years. The defendant told the officers that he had blood on his clothes and that he threw away his shirt but laundered his pants.

The officers played an audiotape for the defendant that was made from the victim's voice mail messages. The recording was from an "accidental" phone call between two men. The recording contained a conversation about searching underneath the victim after he was killed. One officer testified that, after hearing the recording, the defendant became agitated and his speech pattern became stuttered and accelerated. The officers asked the defendant whom he was talking to, and he replied that he was talking to his cousin, Lorenzo Towns. When pressed about why he had told so many different stories about that night, the defendant terminated his conversation with the officers.

Lieutenant Darrell Sheffield testified that he obtained a search warrant for the victim's cellular telephone after receiving information about the victim's voice mail. He received a detailed bill showing the phone numbers from calls received and placed on the victim's phone. The lieutenant was able to determine that the defendant was the subscriber of the phone number used when the incident happened.

Tabitha Bender, an employee of Cricket Communications, testified that she reviewed the telephone records for both the victim and the defendant for calls originating on June 18, 2001. She testified that the defendant called the victim six times between 9:04 p.m. and 10:39 p.m. She testified that the victim phoned the defendant one time, at 9:45 p.m.

Carolyn N. Cambers, an employee of the Shelby County Sheriff's Department, testified that she is responsible for recording telephone calls that originate from the county jail. A taped telephone call made by the defendant was introduced into evidence where he tried to convince someone to tell the police that another person had killed the victim.

The jury convicted the defendant of one count of first degree premeditated murder and one count of first degree felony murder. The court merged the convictions. A timely appeal followed.

Analysis

First, the defendant argues that the evidence was insufficient to support his convictions. Specifically, the defendant argues that the evidence did not prove that the murder was premeditated, that he was the shooter, or that the homicide occurred during a robbery.

When a defendant challenges the sufficiency of the evidence, this court must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979). This court does not "reweigh or reevaluate the evidence" and is required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Once approved by the trial court, a jury verdict accredits the testimony of the witnesses and resolves all conflicts in favor of the State. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). The credibility of witnesses, the weight given to their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as the trier of fact. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's verdict removes the presumption of innocence enjoyed by the defendant at trial and raises the presumption of guilt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the defendant bears the burden of overcoming this presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991).

In the instant case, the defendant argues that the evidence was insufficient to demonstrate that he formed the requisite premeditation in killing the victim. Tennessee Code Annotated section 39-13-202(a)(1) includes a requirement of premeditation for the offense of first degree murder. The statute requires that the killing be "premeditated and intentional" for a first degree murder. A premeditated act is "an act done after the exercise of reflection and judgment" and means that "the intent to kill must have been formed prior to the act itself." *Id.* at § 39-13-202(d). The defendant's mental state at the time he decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation. T.C.A. § 39-13-202(d). The element of premeditation is a question of fact to be resolved by the jury and may be established by proof of the circumstances surrounding the killing. *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000). The Tennessee Supreme Court has previously determined the following circumstances that support a finding of premeditation: the use of a deadly weapon on an unarmed victim; the particular cruelty of a killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; any preparations to conceal the crime undertaken before the crime is committed; destruction of evidence of the killing; and a defendant's calmness after a killing. *State v. Leach*, 148 S.W.3d 42, 53-54 (Tenn. 2004) (citing *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1987)). Additionally, the factors are not exhaustive. *State v. Davidson*, 121 S.W.3d 600, 615 (Tenn. 2003).

The State argues that the evidence is sufficient to establish that the defendant committed a premeditated murder. We agree. There is sufficient evidence to support the requisite premeditation. The victim was unarmed, and there was no evidence of a struggle. The defendant made several phone calls to the victim to draw him to the car wash. The victim was shot two times, once in the

side of the face and once at the base of his skull. The defendant searched the victim's car after he killed him. The defendant is not entitled to relief on this issue.

The defendant also argues that the State failed to sufficiently prove that he was the shooter. The evidence presented at trial demonstrated that the defendant was present when the victim was shot. The defendant placed several phone calls to the victim to arrange a meeting at the car wash. The defendant was inside the car with the victim when he was shot and killed.

The State contends that the circumstantial evidence was enough to support the defendant's convictions. Circumstantial evidence may be sufficient to support a conviction. *State v. Richmond*, 7 S.W.3d 90, 91 (Tenn. Crim. App. 1999); *State v. Buttrey*, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, to warrant a criminal conviction on circumstantial evidence alone, the evidence "must be not only consistent with the guilt of the accused but it must also be inconsistent with his [or her] innocence and must exclude every other reasonable theory or hypothesis except that of guilt." *Pruitt v. State*, 3 Tenn. Crim. App. 256, 267, 460 S.W.2d 385, 390 (1970). The jury decides the weight to be given to circumstantial evidence and that "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 452, 313 S.W.2d 451, 457 (1958) (quoting 2 Wharton's Criminal Evidence 1611).

The record demonstrates that the evidence is sufficient to establish the defendant as the victim's murderer. The defendant argues that he presented evidence that was contradictory to the State's theory. However, the defendant's sole evidence that the victim was shot by another person was the defendant's own testimony. Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. *See State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). When considered in the light most favorable to the State, the evidence presented was sufficient to prove that the defendant was responsible for the victim's death.

Next, the defendant argues that the evidence was insufficient to support the theory that the killing occurred during the commission of a robbery. To convict a defendant of first degree felony murder, the State must prove the defendant killed "another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy[.]" T.C.A. § 39-13-202(a)(2). Tennessee Code Annotated section 39-13-202 also provides that "[n]o culpable mental state is required for conviction under subdivision (a)(2) . . . except the intent to commit the enumerated offenses or acts." T.C.A. § 39-13-202(b). Additionally, the death must occur "in the perpetration of" the enumerated felony. *State v. Hinton,* 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000) (citations omitted). The killing may precede, coincide with, or follow the felony and still be in the perpetration of the felony, so long as there is a connection in time, place, and continuity of action. *State v. Buggs*, 995 S.W.2d 102, 106 (Tenn. 1999). If the underlying felony and killing were part of a continuous transaction with no break in the chain of events and the felony had not reached a place of temporary safety between the events, felony murder is sufficiently established. *State v. Pierce*, 23 S.W.3d 289, 294-97 (Tenn. 2000). Proof of the intention to commit the underlying felony and at what point it existed are questions of fact to be decided by the jury after consideration of all the facts and circumstances. *Buggs*, 995 S.W.2d at 107.

The evidence presented at trial was circumstantial, but it was sufficient to support the jury's verdict here. When viewed in the light most favorable to the State, the proof at trial demonstrated that the defendant placed several phone calls to the victim prior to the victim's death. The defendant acknowledged that he arranged a meeting with the victim at the car wash. The defendant also acknowledged that he was present when the victim was shot. A bloody fingerprint belonging to the defendant was found inside the victim's car. The State introduced a voice mail message, left on the victim's cellular phone, that included the defendant's voice discussing a search of the victim in an attempt to find money. The State also submits that the victim's car had been searched. The police testified that the console and the glove box had indentations consistent with someone trying to force them open. Our review reflects that the evidence supports the defendant's conviction for first degree felony murder. The defendant is not entitled to relief on this issue.

Next, the defendant argues that the audiotape should have been excluded from evidence. Specifically, he contends that the evidence was hearsay and that his right to confrontation was violated. The State argues that the confrontation argument is waived because it was raised neither at trial nor in his motion for new trial. The State relies on Tennessee Rule of Appellate Procedure 36(a), which states that an issue may not be raised for the first time on appeal. We agree with the State that the argument is waived.

Even if we waive Tennessee Rule of Appellate Procedure 36 in the interest of justice, the defendant is not entitled to relief because the conversation on the audiotape is not "testimonial hearsay" as contemplated by the rules of evidence. The admission of testimonial hearsay is barred under the Confrontation Clause unless the witness "was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 814, 823, 126 S. Ct. 2266 (2006). A testimonial statement "is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact'" and includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Crawford*, 541 U.S. at 51-52. The audiotape contained a conversation between the defendant and a second person and cannot be barred by the Confrontation Clause because the conversation was not offered for truth, but instead for context and evidence of knowledge. The Confrontation Clause does not bar testimonial statements when they are offered for some purpose other than the truth of the matter asserted. *Id.*, 541 U.S. at 59 n.9. The conversation on the tape was the defendant and another person discussing looking underneath the dead victim and in the victim's car after the killing. Because the statements were offered to establish context and the defendant's presence at the crime scene, the Confrontation Clause does not bar admission of the statements. The trial court properly admitted the audiotape at trial.

Next, the defendant argues that the indictment was insufficient because it failed to state an offense recognized under prevailing law. Specifically, the defendant argues that Count One of the indictment did not contain a lawful charge because it alleged that the defendant killed the victim "unlawfully and with the intent to commit Attempted Robbery." He contends that the indictment suggested that the defendant only intended to attempt to rob the victim and argues that the intent to

commit attempted robbery is not a crime. But, the State argues that this issue is waived pursuant to Tennessee Rule of Criminal Procedure 12(b)(2), which provides that defenses and objections based on defective indictments must be raised prior to trial or they are waived. *See also Wyatt v. State,* 24 S.W.3d 319, 322 (Tenn. 2000). We agree. Because the defendant did not raise this issue prior to trial and because no contemporaneous objection was made at trial, on this ground, the issue is waived pursuant to Tennessee Rule of Appellate Procedure 3(e).

## Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

 

_____
JOHN EVERETT WILLIAMS, JUDGE