# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 3, 2011

## STATE OF TENNESSEE v. RODERICK MOORE

**Appeal from the Criminal Court for Shelby County**
**No. 05-02464      Carolyn Wade Blackett, Judge**

---

**No. W2010-01233-CCA-R3-CD  - Filed August 18, 2011**

---

A Davidson County jury convicted the Defendant, Roderick Moore, of first-degree murder in the perpetration of a robbery, reckless homicide, and especially aggravated robbery. He was sentenced to concurrent sentences of life imprisonment for the first-degree murder, two years for the reckless homicide, and eighteen years for the especially aggravated robbery. On appeal, the Defendant argues that the trial court erred by limiting the cross-examination of the investigating police officer and that the evidence was insufficient to sustain his conviction for first-degree murder in the perpetration of a robbery. Following our review, we affirm the Defendant's convictions for first degree murder and especially aggravated robbery. We remand for entry of a judgment reflecting that the reckless homicide conviction merged into the first-degree murder conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part; Remanded

DAVID H. WELLES, SP. J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Michael R. Working, Memphis, Tennessee for the appellant, Roderick Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Goodman and Brooks Yelverton, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

This case arises out of the November 23, 2004 murder and robbery of sixty-three year-old Robert Adams. A Shelby County Grand Jury indicted the Defendant for first-degree premeditated murder, first-degree murder in the perpetration of a robbery, and especially aggravated robbery. On March 5, 2010, a jury convicted the Defendant of reckless homicide, first-degree murder in the perpetration of a robbery, and especially aggravated robbery. The trial court sentenced him on May 7, 2010, to concurrent sentences of life imprisonment for the felony murder conviction, two years for the reckless homicide conviction, and eighteen years for the especially aggravated robbery conviction.

On November 23, 2004, Jelahni Bridgefor was moving his belongings from one unit to another at the Foxwood Apartments in Memphis. As he was putting items in his car, he noticed a yellow cab drive through the apartment complex, which was unusual for the area. Bridgefor went back upstairs to his apartment to retrieve his television and saw the yellow cab still in the parking lot as he came back downstairs. As Bridgefor put the television in his car, he heard someone yell for "help." He looked over to the cab and saw the victim, Robert Adams, get out of the driver's seat of the cab and fall to the ground. Bridgefor saw the Defendant exit the cab and stand over the victim. The victim then threw his wallet out, and the Defendant picked it up, looked inside it, and put it in his pocket. The victim got up off the ground and got back into his cab. Bridgefor did not see any blows struck, nor did he see a weapon.

The Defendant ran toward Bridgefor but then turned to run the other way, saying to Bridgefor, "Don't say nothing." Bridgefor and a young woman went to the victim's aid. The young woman started to reach for the victim, but Bridgefor admonished her not to touch him. Rather, he instructed her to call 9-1-1.

Bridgefor spoke to the police after they arrived on the scene. Though the Defendant was wearing a hat, Bridgefor got a good look at his face when the Defendant was running toward him. Bridgefor was able to describe to police that the Defendant was a young man, in his early twenties, and had his hair cut in a "ball fade" style. He also recalled that the Defendant was taller than himself and estimated his weight between 160 and 170 pounds.

Memphis Police Officer Timothy Rogers responded to the scene. Upon his arrival, he found a taxi cab in the southwest corner of the Foxwood Apartment complex, with the victim lying in the driver's seat. He was dead upon Rogers's arrival and was already turning

blue. Officer Rogers noticed a large amount of blood at the feet of the victim and on the ground near the driver's side door of the cab.

Memphis Police Officer William Merritt also responded to the scene. Officer Williams was assigned to document evidence found at the scene. He collected a set of keys to the cab from the front shirt pocket of the victim along with a five-dollar bill. A cellular telephone belonging to the victim was found on the roof of the cab. Officer Merritt also communicated with the Yellow Cab Company and learned that the victim had picked up a fare around the 1700 block of North Germantown Parkway before this incident.

Bridgefor met with police two days after the murder, on November 25, 2004, to view a photographic line-up. At that time, Bridgefor identified a suspect that "looked like the guy," but he was not able to make a positive identification. Bridgefor again viewed a photographic lineup on November 30, 2005. This time, he positively identified the Defendant as the assailant.

On December 5, 2004, after Bridgefor's identification of the Defendant, Memphis Police Lieutenant Nathan Berryman, then a sergeant in the homicide unit, interviewed the Defendant in connection with the victim's murder. The Defendant signed a waiver of rights after being advised of his rights and after reading the advice of rights form out loud to Lt. Berryman. The Defendant initially denied any involvement in the murder, but upon further questioning, he changed his story. In a statement reduced to writing, the Defendant admitted responsibility for the murder:

> I was working at Marshall about 9:00 and left and called a cab. The cab came and took me to my house. The cab fare was thirty two dollars and some change. I only had twenty dollars. The cab driver told me that he was going to beat my black ass if I didn't give him his money. He tried to grab me. I hit him in his face. I grabbed my knife and he cut his self on his hand. He got out of the car and I got out behind him and told him to give me his wallet. He didn't give it to me. I stabbed him in the lower part of his body. He still didn't get it to me and I stabbed him again. He gave me his wallet and I ran home.

Lieutenant Berryman acknowledged that, when he interviewed the Defendant, the Defendant orally stated that he first stabbed the victim and then demanded his wallet, as opposed to the other way around, as memorialized in the written statement. However, the Defendant, after reviewing the typed statement, initialed each page and signed the statement.

The Defendant further told Lt. Berryman that he told a bystander not to say anything as he fled the crime scene. He also admitted that he discarded the knife in some bushes in

South Memphis and that he burned the clothes he was wearing – a beige jacket, black jeans, a black t-shirt, and white sneakers – on a barbeque grill at his sister's house in Whitehaven. He stated that he removed over $200 from the victim's wallet and discarded the wallet outside in front of his mother's apartment. At his mother's apartment, he changed clothes and recounted the incident to his cousin, Vincent Hale. He then left the apartment when "Tanisha" picked him up. He further admitted using a false name when he called for the cab from a Shell gas station.

A still photograph taken from surveillance camera footage at the Shell gas station near the 1700 block of North Germantown Parkway on November 23, 2004, shows a young African-American man wearing a beige jacket, black jeans, and white sneakers. The Defendant admitted to Lt. Berryman that he was the person in the photograph. Lieutenant Berryman also retrieved surveillance footage from the Marshall's store on Germantown Parkway where the Defendant worked on November 23, 2004. A still photograph shows a young African-American male, wearing a beige jacket and black jeans, pushing a clothing rack.

Dr. Karen Chancellor, the Chief Medical Examiner for Shelby County, testified at trial about the victim's autopsy, which was performed by former assistant medical examiner Dr. Joy Carter. The autopsy revealed multiple cut wounds to the palm of the victim's left hand, consistent with a struggle, and a cut above his left eye. He also had stab wounds, made by a similar instrument, on each leg and his right arm. The stab wound to the left leg severed the popliteal artery and vein, which are major blood vessels in the leg. This wound would have caused significant bleeding. Dr. Chancellor concurred with the autopsy results that the victim died as a result of multiple stab wounds.

**Analysis**

**I. LIMITATION ON CROSS-EXAMINATION OF LIEUTENANT BERRYMAN**

The Defendant contends that the trial court erred by limiting his cross-examination of Memphis Police Lieutenant Nathan Berryman. Specifically, he claims that two non-testifying witnesses identified someone else as the assailant and that he should have been allowed to cross-examine Lt. Berryman as to their out-of-court identifications. The State counters that the evidence was irrelevant, hearsay, and otherwise inadmissible under Tennessee Rule of Evidence 403. We agree with State.

Trial courts have broad discretion in determining the admissibility of evidence. State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996). "It is well-settled that the propriety, scope, manner[,] and control of the examination of witnesses is a matter within the discretion of the

-4-

trial judge, subject to review for abuse of discretion." State v. Caughron, 855 S.W.2d 526, 540 (Tenn. 1993). The trial court's exercise of discretion may not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997).

For evidence to be admissible, it must be relevant. Tenn. R. Evid. 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 of the Tennessee Rules of Evidence provides in relevant part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

After reviewing the evidence and the arguments of counsel on this issue, we conclude that the trial court properly limited the cross-examination of Lt. Berryman. First, the evidence the Defendant sought through cross-examination of Lt. Berryman is irrelevant under Tennessee Rule of Evidence 401. The Defendant conceded at trial and admitted to police in a written statement that he was the perpetrator of the crimes against the victim. Therefore, evidence that two other witnesses identified another individual as the assailant does not make the existence of any fact of consequence to the jury's determination any more or less probable. The only issue for the jury was one of the degree of the Defendant's culpability. Identity of the assailant was not. The Defendant claimed at trial, and now again on appeal, that the evidence reflected on the integrity of the police interrogation and was relevant to that issue. That was not an issue at trial either because the Defendant conceded that he was the perpetrator. When addressing this issue in the trial court, the Defendant's attorney stated, "We would stipulate he's the person. . . . I mean, we've stipulated that he's the right person." Moreover, the fact that witnesses identified someone other than the Defendant bears no reflection on the integrity of the police investigation.

Second, even if the evidence was somehow relevant, we agree with the trial court that its probative value was substantially outweighed by the danger of confusion of the issues or misleading the jury under Tennessee Rule of Evidence 403. The Defendant twice sought to cross-examine Lt. Berryman about these other out-of-court identifications, and the trial court twice sustained the State's objection, claiming "I'm confused." The jury was likely to be as confused as the trial court as to the relevance of this evidence, and the probative value of an issue not before the jury was substantially outweighed by the danger of confusing the jury on the issue before it – the degree of the Defendant's culpability. Therefore, the trial court properly exercised its discretion to prevent this confusion.

Finally, we conclude that evidence of the two other out-of-court identifications made by unavailable witnesses was inadmissible hearsay. "Hearsay" is a statement, other than one by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tenn. R. Evid. 801(c). Hearsay is not admissible except as provided by the rules of evidence or otherwise by law.

Tennessee Rule of Evidence 803(1.1) provides an exception to the hearsay rule for prior statements of identification by a witness made after perceiving the person if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement. (Emphasis added). A party seeking to admit evidence under the prior identification exception must establish four elements: (1) that the declarant made an identification of a person; (2) that the identification was made after perceiving the person; (3) that the declarant testified at the hearing or trial in which the prior identification was introduced; and (4) that the declarant was subject to cross examination about the statement. State v. Stout, 46 S.W.3d 689, 698 (Tenn. 2001) (citing Neil P. Cohen et al., Tennessee Law of Evidence, § 803(1.1).2, at 507-08 (3d ed. 1995)).

The out-of-court identifications the Defendant sought to admit through the testimony of Lt. Berryman are hearsay and not admissible under any exception to the hearsay rule. The Defendant insisted at trial that he was not seeking admission of these other identifications for the truth of the matter asserted – that the witnesses had identified the wrong assailant – but to attack the integrity of the police investigation. As the State notes in its argument on appeal, the failing of this argument is that if the misidentifications are not offered for their truth, then they do nothing to impeach the integrity of the investigation. Moreover, Tennessee Rule of Evidence 803(1.1) provides no vehicle to admit this evidence. The hearsay declarants did not testify at trial and were not subject to cross-examination. Therefore, the misidentifications are not admissible under the hearsay exception provided by Rule 803(1.1). This issue is without merit.

## II. SUFFICIENCY OF THE EVIDENCE FOR FELONY MURDER

The Defendant next contends that the evidence was insufficient to support his conviction for murder in the perpetration of a robbery. Specifically, he argues that the proof demonstrated that the killing of the victim was separate and distinct from the robbery. Our review of the record reveals that the murder and the robbery occurred in an unbroken chain of events and therefore, supports the jury's verdict that the Defendant was guilty beyond a reasonable doubt of murder during the perpetration of a robbery.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is

insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

First-degree felony murder is the killing of another committed in the perpetration of or attempt to perpetrate, among other things a robbery. Tenn. Code Ann. § 39-13-202(a)(2). Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. Tenn. Code Ann. § 39-13-401. In considering whether the evidence is sufficient to support a conviction of first-degree felony murder, this Court must determine whether the killing is closely connected to the felony in time, place, causation, and continuity of action. State v. Pierce, 23 S.W.3d 289, 295 (Tenn. 2000). The felony does not have to be committed contemporaneously with the murder. State v. Morris, 24 S.W.3d 788, 799 (Tenn. 2000).

The Defendant contends no evidence was introduced to show that he intended to commit a robbery prior to or concurrent with the murder. We disagree. Considering the evidence in the light most favorable to the State, the killing and the robbery occurred as an unbroken chain of events and is sufficient to support his conviction for felony murder.

On November 23, 2004, the Defendant called for a cab using a false name and was carrying a five-inch blade butcher knife with him at the time. After he could not pay the cab

fare, a struggle ensued in the cab, in which the Defendant brandished his concealed weapon. The victim was cut with the knife during the struggle. Jelahni Bridgefor heard the victim scream for "help", and, when he looked in the direction of the cab, he saw the victim jump out of his seat and fall to the ground. He then saw the Defendant standing over the victim and witnessed the victim throw his wallet away from himself. The Defendant retrieved the wallet, looked inside it, and ran away from the scene. The victim then got up and got back into his cab before he died from his wounds.

In the Defendant's signed written statement, he stated that it was not until after he demanded the wallet of the victim that the fatal stabbing occurred. He argues that his written statement does not accurately reflect the sequence of events or what he told Lt. Berryman. Rather, he contends that he did not demand the wallet from the victim until after he stabbed him. This argument elevates form over substance. It is irrelevant when the fatal stabbing occurred in relation to the demand for the wallet.

By any account, the Defendant had formed sufficient intent to rob the victim either before or concurrent with the killing. As the trial court instructed the jury, "[t]he intent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim. Proof that such intent to commit the underlying felony existed before, or concurrent with, the act of killing is a question of fact to be decided by the jury after consideration of all the facts and circumstances." See also 7 Tennessee Practice, Tennessee Pattern Jury Instructions - Criminal 7.03(a). The elements of a criminal offense may, of course, be established exclusively by circumstantial evidence. See Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973). Ultimately, however, the jury must decide the significance of the circumstantial evidence, as well as "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006); see also State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011).

Here, the fact that the Defendant called for the cab using a false name and carrying a five-inch butcher knife is certainly circumstantial evidence from which the jury could have reasonably inferred he intended to rob the cab driver before he ever got into the cab. Moreover, the evidence shows that the Defendant stabbed the victim multiple times, during which he demanded the victim's wallet. This indicates a concurrent intent to rob the victim during the murder.

Therefore, after reviewing the evidence in the light most favorable to the State, we conclude that there was sufficient evidence of an inextricable intertwining of time, place, causation, and continuity of action in the theft of the victim's wallet and the killing of the victim. See State v. Michael Lynn Stanton, No. E2003-02675-CCA-R3-CD, 2005 WL

876873, at *11 (Tenn. Crim. App., Knoxville, Apr. 15, 2005), perm. to appeal denied (Oct. 23, 2005) (the evidence was sufficient to support a conviction of first-degree murder in the perpetration of an aggravated burglary where chain of events occurred at victim's residence within ten to fifteen minutes). This issue is without merit.

However, we note that the trial court entered separate judgments for the two homicide convictions even though only one person was killed. The constitutional double jeopardy protections of the Fifth Amendment to the United States Constitution and article I, section ten of the Tennessee Constitution prohibit multiple judgments for the same offense. Here, the trial court should have merged the judgments in the two homicide counts because they were alternate theories for the killing of Robert Adams. See State v. Hurley, 876 S.W.2d 57, 70 (Tenn. 1993); State v. Addison, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997). Therefore, we remand this case to the Shelby County Criminal Court for entry of corrected judgments to reflect that the reckless homicide conviction merged into the felony murder conviction.

## Conclusion

For the reasons articulated above, we affirm the Defendant's convictions for first-degree felony murder and especially aggravated robbery. Consistent with this opinion, we remand this case to the Shelby County Criminal Court for the entry of corrected judgments to reflect the merger of the Defendant's reckless homicide conviction into that of the felony murder conviction.

_____
DAVID H. WELLES, SPECIAL JUDGE